UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| JERMAINE FRANKLIN, JR., | |
| Appellant, | |
| v. | Case No. 25-cv-13060 |
| | Honorable Robert J. White |
| MARK F. HAAK, | |
| Appellee. | |

## OPINION AND ORDER REMANDING CASE TO THE BANKRUPTCY COURT

I.     Introduction

Jermaine Franklin appeals the bankruptcy court's opinion and order granting Mark Haak's motion to dismiss his Chapter 7 bankruptcy petition under 11 U.S.C. § 707(a) for filing it in bad faith.

Before the Court is Franklin's opening brief. (ECF No. 6).  Haak responded. (ECF No. 7).  Franklin replied. (ECF No. 10).  For the following reasons, the bankruptcy court's opinion and order will be remanded.

II.    Background

A.     The Parties and Their Previous Agreement

Franklin is a professional boxer and a Michigan resident. *Franklin v. Haak* ("*Franklin I*"), 499 F. Supp. 3d 379, 382 (E.D. Mich. 2020).  Haak is an attorney, boxing manager, and a Pennsylvania resident. *Id.*  The two were introduced in 2014 and entered into a boxer-manager agreement (the "Agreement"). *Id.*

Under Haak's management, Franklin fought 17 bouts and went undefeated. *Id.* at 384.  Despite this, Franklin felt that he was "not a priority" under Haak's management and found his compensation inadequate. *Id.*  Haak, however, had been paying into the "purse"—a boxer's compensation for a bout—on behalf of not only Franklin, but also his opponents. *Id.* at 384–85.  Haak never received any income from managing Franklin, despite the investment he made into Franklin's career. *Id.* at 385.  Yet Franklin was struggling economically under the Agreement. *Id.* at 384–86.

Things came to a head in early August of 2018, when Franklin sent Haak an email claiming that the Agreement was unconscionable and illegal.  He requested mutual recission. *Id.* at 386.  Franklin then retained Salita Promotions, Corp. as his exclusive promoter. *Id.* at 387.

B.    *The Civil Complaint*

Franklin sued Haak in January 2019 seeking, among other things, declaratory relief invalidating the Agreement. (*Franklin v. Haak*, Case No. 19-10137, ECF No.

18). Haak counterclaimed for breach of contract and declaratory relief seeking to enforce the Agreement. (*Id.*, ECF No. 27).

Haak moved for a declaratory judgment on the pleadings after the district court dismissed everything but Franklin's breach of fiduciary duty claim. *Franklin I* at 388. Haak requested a declaration that (1) the Agreement was valid, (2) Franklin was not permitted to unilaterally terminate the Agreement, (3) he remained Franklin's manager, and (4) the Agreement was valid for another two years and 310 days. *Id.* The district court granted the motion in part, declared the Agreement valid, but declined to reach Haak's other requests for declaratory relief. *Id.*

The parties then cross-moved for summary judgment. *Id.* The district court denied Franklin's motion in its entirety, granted Haak's cross-motion in part, and dismissed the amended complaint. *Id.* at 399. The district court entered judgment in Haak's favor on his request for declaratory relief. (Case No. 19-10137, ECF No. 62).

C. *Franklin's Bankruptcy Case*

The saga continued when Franklin filed for Chapter 7 bankruptcy in June 2021 and requested that the bankruptcy trustee reject the Agreement as "executory.". (*In re Franklin*, Case No. 21-20657, ECF No. 1; *see also* ECF No. 32) ("Enforcement Motion I").

Meanwhile, Haak took the offensive. In October of 2021, he initiated an adversary proceeding against Franklin. *See In re Franklin,* No. 21-20657, 2022 WL

3691668 (Bankr. E.D. Mich. Aug. 24, 2022).  And he moved to dismiss the petition on the ground that Franklin instituted the bankruptcy proceeding in bad faith. *In re Franklin*, No. 21-20657, 2022 WL 210032, at *1 (Bankr. E.D. Mich. Jan. 24, 2022).

But the bankruptcy court denied Haak's dismissal motion after considering the bad-faith factors delineated in *In re Zick*, 931 F.2d 1124 (6th Cir. 1991). *Id.* at *7–10.  While the bankruptcy court did not "find Mr. Franklin's case to be odor free," it found "there [was] not enough odor to warrant dismissal." *Id.* at *10.

Having determined that the petition could proceed, the bankruptcy court issued a bench ruling that the Agreement was executory. (*Haak v. Franklin*, Case No. 21-02032, ECF No. 24).  The parties then stipulated to the entry of an order granting in part and denying in part Enforcement Motion I. (*In re Franklin,* Case No. 21-20657, ECF Nos. 153-54).  The stipulated order declared that the Agreement was rejected under 11 U.S.C. § 365(d)(1), but noted that Franklin "may file a new motion seeking" to enforce the rejection. (*Id.*, ECF No. 153).

The next day, Franklin filed a second motion to enforce the rejection of the Agreement ("Enforcement Motion II"). (*Id.*, ECF No. 156).  The bankruptcy court granted the motion and "ordered that [Franklin] is not required to perform the Contract ... including any exclusivity, payment, or other obligations owed to Mr. Haak under the Contract, effective June 4, 2021. Mr. Haak shall not attempt to

enforce any exclusivity provisions, demand any payment from purse, nor manage [Franklin] nor interfere with his management." (*Id.*, ECF No. 171).

Haak appealed to the district court, arguing that the denial of his motion to dismiss the petition and the disposition of Franklin's motions to enforce the rejection of the Agreement constituted reversible error. *Haak v. Franklin* ("*Franklin II*"), 654 B.R. 255, 262 (E.D. Mich. 2023).

But before the district court could resolve the appeal, Haak moved for (1) judicial notice of Franklin's boxing matches that occurred after the bankruptcy court's ruling, and (2) a remand to the bankruptcy court to consider whether these bouts demonstrated Franklin's bad faith under 11 U.S.C. § 707(a). *Id.* at 263.

The district court granted the motion and took judicial notice of the three matches Franklin fought between November 26, 2022 through July 15, 2023. *Id.* at 265–66.  Even though the first of these fights occurred over a year after Franklin initially filed for bankruptcy (and nearly a year after the bankruptcy court rejected Haak's motion to dismiss the petition for bad faith), the district court remanded the case to the bankruptcy court with instructions to reassess whether Franklin's bankruptcy filing lacked good faith. *Id.* at 266.

On remand, the bankruptcy court reevaluated the *Zick* factors in view of the three post-bankruptcy matches. *In re Franklin*, No. 21-20657, 2025 WL 2650110, at *3 (Bankr. E.D. Mich. Sept. 15, 2025).  The bankruptcy court about-faced from its

previous ruling, concluded that Franklin filed his petition in bad faith, and granted

Haak's motion to dismiss the petition pursuant to § 707(a). (*In re Franklin*, Case No.

21-20657, ECF No. 296).

Franklin now appeals the bankruptcy court's decision that he filed the Chapter

7 petition in bad faith.

III.    Standards of Review

A bankruptcy court's dismissal of a petition pursuant to § 707(a) is reviewed

for an abuse of discretion. *In re Zick*, 931 F.2d 1124, 1126 (6th Cir.1991); *In re

Turpen*, 244 B.R. 431, 433 (8th Cir. BAP 2000).  A court abuses its discretion when

it "relies upon clearly erroneous findings of fact or when it improperly applies the

law or uses an erroneous legal standard." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859

F.2d 26, 30 (6th Cir.1988).

IV.    Analysis

A.    *Vacatur*

The Court must first address a threshold issue. In his opening brief, Franklin

made three arguments on appeal: (1) that the District Court erred in requiring the

bankruptcy court to reassess the *Zick* factors *de novo* in consideration of the three

post-bankruptcy fights, (2) that the bankruptcy court, following the mandate of the

District Court, relied on unverified websites when analyzing how much money he

made from these fights, and (3) that the bankruptcy court erred by finding that

Franklin should have updated his Schedule I and J forms because of these three fights. (ECF No. 6).

Seemingly, the first of these arguments could be construed as a request to vacate the Court's previous decision taking judicial notice of the three post-bankruptcy bouts. When Franklin filed his initial brief, he appeared *pro se*. The Court, noting that it is bound to liberally construe the filings of *pro se* litigants, *see Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005), directed supplemental briefing on whether it had the authority to vacate its previous decision taking judicial notice. (ECF No.11). However, from the parties' submissions, it is apparent that the Court cannot do so.

To better explain why the Court cannot vacate its prior decision, an explanation of a court's authority to vacate a prior decision and jurisdiction conferred to courts in bankruptcy appeals is necessary.

To start, district courts have inherent power to reconsider interlocutory orders and reopen any part of a case before the entry of a final judgment. *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir.1991). Indeed, "[a] district court may modify, or even rescind, such interlocutory orders." *Mallory*, 922 F.2d at 1282 (citing *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47–48 (1943)). So if the order taking judicial notice of the post-

- 7 -

bankruptcy bouts is interlocutory, the Court may reconsider and even vacate that order.

But this is the second bankruptcy appeal in this matter. The last one was closed. This Court's appellate jurisdiction arises under 28 U.S.C. § 158(a), and extends to all "final judgments, orders, and decrees." *Id.* at § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *In re Riddle*, No. 19-8022, 2020 WL 3498438, at *1 (B.A.P. 6th Cir. June 29, 2020) (citing *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020)). For instance, in the first bankruptcy appeal, the Court concluded that the bankruptcy court's order granting Enforcement Motion II was a final order because it disposed of the "discrete dispute" between Franklin and Haak—whether Franklin was required to perform under the Agreement or not — in the core bankruptcy proceeding. *Franklin II* at 263–64.

Additionally, the Court's jurisdiction over a bankruptcy appeal extends to all nonfinal orders issued by the bankruptcy court in the discrete dispute. *See In re Midway Motor Sales, Inc.*, 407 B.R. 442 (B.A.P. 6th Cir. 2009) ("Nonfinal orders merge with the final judgment in a case and may be appealed by filing a timely notice of appeal of the final judgment."); *see also In re Blasingame*, 598 B.R. 864, 868 (B.A.P. 6th Cir. 2019). For example, the Court in the first bankruptcy appeal found that it had jurisdiction over both Haak's appeal from the decision regarding

Enforcement Motion I and the bankruptcy court's denial of his motion to dismiss under § 707(a) since they were nonfinal orders which had merged into the final judgment. *Franklin II* at 265.

But when the Court declined to reach the merits of these orders on appeal, and instead took judicial notice of the post-bankruptcy bouts and remanded the case back to the bankruptcy court, a unique procedural posture was created. For starters, the Court said in its opinion that it was issuing a "final order" which closed the case. *Id.* at 266. However, and as the Sixth Circuit noted when Franklin attempted to appeal this Court's prior decision in *Franklin II*, "district court orders remanding a bankruptcy court's decision for further proceedings are *non-final* and non-appealable unless the additional proceedings in the bankruptcy court are purely ministerial in character." *In re Franklin*, No. 23-1932, 2024 WL 4581497, at *1 (6th Cir. Aug. 7, 2024) (emphasis added). And, as the Sixth Circuit stated, this Court's remand was not purely ministerial because it required reopening the prior inquiry in front of the bankruptcy court. *Id.* So this Court's prior order in *Franklin II* was non-final.

Even still, the remand *did* close the first bankruptcy appeal; and the current appeal is entirely separate from the first. What is more, the "jurisdiction to review one judgment gives an appellate court no power to reverse or modify another and independent judgment." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400

(1981).  Therefore, it does not appear that this Court may vacate its prior judgment in the first bankruptcy appeal now that the case is closed.

### B.      Law of the Case

Nonetheless, the Court may resort to another avenue to address whether the district court should have judicially noticed Franklin's three post-bankruptcy bouts. (ECF No. 6, PageID.108).

As Franklin points out, the first of these three bouts took place 17-months after he filed for bankruptcy in June of 2021. (ECF No. 6, PageID.109).  Indeed, the three bouts that the Court took judicial notice of took place on November 26, 2022, April 1, 2023, and July 15, 2023. (*Franklin II*, at 266).  Collectively, those fights range from between 17-25 months *after* Franklin had already filed for bankruptcy.

Franklin argues that his ability to repay his debts more than a year-and-a-half after declaring bankruptcy should not change the fact that his original filing was in good faith and not subject to dismissal under § 707(a). (ECF No. 6, PageID.109).

Haak contends that this argument misses the mark.  He argues that the mandate rule bound the bankruptcy court to reevaluate the *Zick* factors in the context of these three judicially noticed boxing matches. (ECF No. 8, PageID.192–95).

Haak has a point. The Court's mandate read as follows:

> Further, it is **ORDERED** that this case is **REMANDED** to the Bankruptcy Court for *de novo* consideration in light of this new information. The Bankruptcy Court is **DIRECTED** to reassess

> the *Zick* factors in the context of the additional boxing matches and determine whether Franklin's bankruptcy filing lacks good faith.

*Franklin II*, at 266 (emphasis in original).

"The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). A court sitting in appellate review can either issue a general or a limited remand. *Id.* A general remand, for instance, "give[s] district courts authority to address all matters as long as remaining consistent with the remand." *Id.* (citing *United States v. Moore*, 131 F.3d 595, 597 (6th Cir.1997)). A limited remand, on the other hand, explicitly outlines the issues to be addressed by the lower court and provides a narrow framework within which the district court can operate. *Id.* This Court's remand in the previous bankruptcy appeal was a limited remand requiring the bankruptcy court to reassess the *Zick* factors, *de novo*, after considering the three post-bankruptcy bouts.

As the Sixth Circuit has noted, "the mandate rule is a specific application of the law-of-the-case doctrine." *Id.* "Under the doctrine of the law of the case, determinations of the court of appeals of issues of law are binding on both the district court on remand and the court of appeals upon subsequent appeal." *Id.* So the bankruptcy court and now this Court are both bound by the Court's previous

- 11 -

judgment directing the bankruptcy court to take judicial notice of Franklin's post-bankruptcy bouts.

This is not a hard-and-fast rule, though. The Sixth Circuit has said that, while a court's prior holding should not normally be disturbed, it can be if "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Ent. Prods., Inc. v. Shelby Cnty., Tenn.*, 721 F.3d 729, 742 (6th Cir. 2013) (quoting *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir.2009)). Since there has been no intervening change in controlling law nor any new evidence that has come to light, only the third category is applicable.

Indeed, there is a need to correct clear error in the district court's previous decision. There, the district court reasoned that Franklin's post-bankruptcy fights were "adjudicative facts" that the Court could take judicial notice of. (*Franklin II*, at 265). However, the Court did not assess whether these three bouts, taking place over a year-and-a-half after Franklin filed for bankruptcy, were actually relevant to a finding of bad faith under § 707(a).

Federal Rules of Evidence 201 governs judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy

cannot be reasonably questioned." *In re Dow Corning Corp.*, 541 B.R. 643, 655 (E.D. Mich. 2015), *aff'd sub nom. Ezra v. DCC Litig. Facility, Inc.*, 667 F. App'x 538 (6th Cir. 2016) (quoting Fed.R.Evid. 201(b)).   "This standard applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).

But judicial notice is only appropriate when the fact to be noticed is relevant. *See Davis v. United States*, 569 F. Supp. 2d 91, 98 (D.D.C. 2008); *see also Burley v. Williams-Ward*, No. 2:18-CV-12239, 2023 WL 11825225, at *2 (E.D. Mich. Jan. 19, 2023) ("Even where all of these conditions are satisfied, and even where judicial notice might otherwise be mandatory under Rule of Evidence 201, it is always subject to the other evidentiary rules, e.g., Fed. R. of Evid. 401 (relevance)…").

While it is not subject to "reasonable dispute" that Franklin fought these post-bankruptcy bouts, the Court finds them to be irrelevant.  The earliest of these bouts occurred on November 26, 2022, nearly a whole year *after* the bankruptcy court's judgment on January 24, 2022, denying Haak's motion to dismiss under § 707(a). *In re Franklin*, 2022 WL 210032, at *10.  It is difficult to see how three fights, that occurred significantly after Franklin filed for bankruptcy, could possibly have any effect on a determination whether he filed his petition in bad faith.  The Court, therefore, holds that the post-bankruptcy fights are immaterial to a finding of bad

faith under § 707(a). Taking judicial notice of these matches, therefore, constituted clear error.

Reversing course now will have an impact on the bankruptcy court's evaluation of the *Zick* factors on remand. Franklin points out that a consequence of this decision was that the bankruptcy court incorrectly relied on his ability to repay his debts when reevaluating the *Zick* factors, which is disfavored under § 707(a) analysis. (ECF No. 10, PageID.213). In fact, while the ability to pay is the primary focus for dismissal under § 707(b), which governs an "abuse test," "legislative history suggests that Congress did not intend ability to pay to be a primary consideration under § 707(a)," which governs a filing in bad faith. *In re Mohr*, 425 B.R. 457, 466 (Bankr. S.D. Ohio), *aff'd sub nom. U.S. Tr. v. Mohr*, 436 B.R. 504 (S.D. Ohio 2010) (collecting cases). And "the Sixth Circuit has considered the issue and determined that post-petition ability to repay debts, while relevant to good faith, does not, standing alone, support a dismissal under § 707(a) without the presence of other misconduct." *Id.* (citing *In re Merritt*, 211 F.3d 1269 (Table), 2000 WL 420681, at *3 (6th Cir. April 12, 2000).

But even in cases where post-petition income has been a factor, it was the party's income *before* filing for bankruptcy, not an unexpected windfall several months to years *after* filing for bankruptcy, that tipped the scales in favor of dismissal for bad faith.

For instance, in *Merritt*, the debtor, Tillman Merritt, owned a company which leased two grinding machines to defendants Franklin Bank and NBD Bank (collectively the "banks"). *In re Merritt*, 2000 WL 420681, at *1.  After the banks examined the grinding machines and discovered that they did not work, they sued Merritt and received judgments in the way of $45,510.83 and $38,361.83 respectively. *Id.*  In attempts to settle these claims, Merritt at one point offered to pay just $10,000 over the course of a $250 a month settlement, and, once that was rejected, a lump sum of $7,500 to each bank, which was also rejected *Id.*  Merritt then filed for relief under Chapter 7. *Id.*

But, unlike this case, Merritt had substantial assets *before* he filed for bankruptcy.  He and his spouse had a combined income of over $150,000, owned real property worth $425,000 and a second property worth a sizeable amount, although both were subject to mortgages. *Id.*  The Sixth Circuit held that, coupled with his ability to pay and substantial assets, Merritt's offer of only $7,500 on a much higher debt was indicative of the fact that he was not acting in good faith in seeking the protection of the bankruptcy laws. *Id.* at *3.

Franklin's situation is different.  When it first evaluated the *Zick* factors, the bankruptcy court noted that Franklin only reported assets of $20,500, with debts amounting to $164,085.85. *In re Franklin*, 2022 WL 210032, at *5.  His assets were meager, including a 2003 GMC Yukon with 250,000 miles on it, an account with a

Sovita Credit Union worth $15,000, and the sole ownership of two entities that held no value. *Id.* He had exempted all his assets except for $2,200 in the Sovita Credit account. *Id.* Unlike *Merritt*, Franklin did not have the luxury of a high pre-petition income or assets in real property to pay his debts. This factored heavily into the bankruptcy court's decision-making.

The bankruptcy court in both the first instance and on remand evaluated fourteen "*Zick* factors." *See In re Franklin*, 2022 WL 210032, at *6; *In re Franklin*, No. 21-20657, 2025 WL 2650110, at *3 (Bankr. E.D. Mich. Sept. 15, 2025). However, the factors the bankruptcy court analyzed do not all come from *Zick* but instead appear to be the factors compiled from multiple bankruptcy courts which were outlined in *In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995). Regardless, Franklin does not ask this Court to reevaluate these factors, so the Court need not reproduce them here. But as Franklin points out, several of these factors were reevaluated in the context of his post-petition ability to repay his debts. (*See* ECF No. 10, PageID.213). Now holding that the bankruptcy court should not have been instructed to reevaluate the *Zick* factors in light of the post-bankruptcy fights, the Court notes that the bankruptcy court's previous reasoning on remand will naturally have been in error.

Haak counters that the bankruptcy court's reevaluation of the *Zick* factors on remand was based upon the "totality of the circumstances," and argues, without

citing case law, that a "good faith determination is not frozen in time where intervening, undisputed facts materially alter the factual landscape underlying the original ruling." (ECF No. 8, PageID.193).  Haak stresses that part of the reasoning behind the bankruptcy court's first ruling on bad faith was the fact that Franklin's career trajectory as a boxer was uncertain. (*Id.* at PageID.193–94); *see In re Franklin*, 2022 WL 210032, at *7.  But now Franklin's career as a boxer is far from uncertain considering the number of fights he has had post-bankruptcy.  Therefore, these fights are relevant as part of the totality of the circumstances under which the bankruptcy court evaluated the *Zick* factors.

This position misstates the framing of bad faith under *Zick*.  The Sixth Circuit in *Zick* made clear that dismissal for bad faith is exceedingly rare and a high bar: "It should be confined carefully and is generally utilized only in those *egregious* cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Zick*, 931 F.2d at 1129 (emphasis added).  There is nothing egregious about Franklin's brightening career prospects after he declared bankruptcy.

As one court noted, "[t]he Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own

misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors." *In re Jones*, 114 B.R. 917, 926 (Bankr. N.D. Ohio 1990). And the bankruptcy court clearly saw Franklin as the former, not the latter, when it denied Haak's motion to dismiss in the first instance: "On the whole, Mr. Franklin is closer to the unfortunate debtor who is in financial distress and deserving of relief from this Court." *In re Franklin*, 2022 WL 210032, at *10. The only "circumstance" that has changed between the bankruptcy court's first decision and that court's subsequent ruling on remand is the district court's remand order.

In view of the foregoing, the case is remanded to the bankruptcy court with instructions to reevaluate the *Zick* factors once again. The bankruptcy court may take judicial notice of whether Franklin's post-bankruptcy fights occurred but it may not consider those bouts when assessing the *Zick* factors.[1]

### C.     Schedules I and J

Franklin raises an additional argument that is important on remand. He argues that the bankruptcy court erred when it considered his failure to not amend his

---

[1] Franklin also argues that the bankruptcy court erred in relying on websites with improper information about his earnings from the fights which the Court had judicially noticed. (ECF No. 6, PageID.112 –14). But whether the bankruptcy court relied on improper data is irrelevant now because the Court is remanding the case. And because the bankruptcy court will be instructed not to factor in the income from Franklin's post-bankruptcy fights, the bankruptcy court will have no need to consult online websites regarding the income from these bouts.

Schedules I and J after the post-bankruptcy fights. (ECF No. 6, PageID.111–12). When evaluating one of the *Zick* factors, the bankruptcy court noted that it was "problematic" that Franklin had not abided by his "duty to amend Schedules I and J to account for increased income and attendant expenses, especially in light of the ongoing Motion to Dismiss and other issues concerning Mr. Haak." *In re Franklin*, 2025 WL 2650110, at *4.  Haak again argues that this is just one factor in the totality of the circumstances that the bankruptcy court considered in dismissing Franklin's bankruptcy under § 707(a). (ECF No. 8, PageID.195).  But whether Franklin updated his Schedules I or J should not have been a factor for consideration at all.

Franklin was under no obligation to update his Schedules I or J after he filed for bankruptcy.  "Schedule I and J capture a snapshot as of the date of filing for relief under the Bankruptcy Code." *In re Petro*, 395 B.R. 369, 378 (B.A.P. 6th Cir. 2008). This means that changes in income may not be accurately reflected in Schedules I or J. *See id.* ("Thus, anticipated changes in income, such as those that result from retirement or bonuses, may not be accurately reflected on Schedules I and J.").  A debtor does have a "fundamental obligation to file schedules and other disclosures that are truthful and accurate." *In re Gaulden*, 522 B.R. 580, 593 (Bankr. W.D. Mich. 2014).  And the debtor has a duty to update their schedules, but only if they become aware of any inaccuracies or omission. *In re Bauer*, 298 B.R. 353, 357 (B.A.P. 8th

Cir. 2003). Outside of this narrow requirement, there is seemingly no statutory duty to continually update the schedules.

Pursuant to 11 U.S.C § 521(a)(1) and Federal Rule of Bankruptcy Procedure 1007(b), there are several documents that a debtor must file at the outset of a bankruptcy case, including schedules of assets, liabilities, income, and expenses. *In re Koffah*, 676 B.R. 907, 922 n.10 (Bankr. S.D. Ga. 2025) (citing *In re Boyd*, 618 B.R. 133, 148–49 (Bankr. D.S.C. 2020)). Federal Rule of Bankruptcy Procedure 1009(a) governs when a debtor or a party in interest can amend their schedules:

> (1) *By a Debtor*. A debtor may amend a voluntary petition, list, schedule, or statement at any time before the case is closed. The debtor must give notice of the amendment to the trustee and any affected entity.
> (2) *By a Party in Interest*. On a party in interest's motion and after notice and a hearing, the court may order a voluntary petition, list, schedule, or statement to be amended. The clerk must give notice of the amendment to entities that the court designates.

Fed. R. Bankr. P. 1009(a) (emphasis in original). The language in sub-section (a)(1) is permissive, explicitly outlining that a debtor *may* amend their schedules before the case is closed. The Advisory Committee Notes observe that the rule "continues the permissive approach adopted by former Bankruptcy Rule 110 to amendments of voluntary petitions and accompanying papers." Fed. R. Bankr. P. 1009 Advisory Comm. Notes.

There is one caveat to this permissiveness.  Under Federal Rule of Bankruptcy Procedure 1007(h), "[a]fter the petition is filed in a Chapter 7…case, if the debtor acquires—or becomes entitled to acquire—an interest in property described in § 541(a)(5), the debtor must file a supplemental schedule and include any claimed exemption."

Under § 541(a)(5), this property is "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date":

(A) by bequest, devise, or inheritance;
(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
(C) as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5).

Here, Franklin did not start making money until his first fight 17 months later – well beyond the 180-day deadline outlined in § 541(a)(5).  And none of the three categories by which a debtor obtains property, and is required to update their schedules under § 541(a)(5), apply to Franklin's situation.  As a result, he was under no obligation to update his Schedules I and J, and the bankruptcy court's contrary determination when evaluating the *Zick* factors was an abuse of discretion. *See Fleischut*, 859 F.2d at 30 (A court "abuses its discretion only when it relies upon

clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard."). So the bankruptcy court may not consider Franklin's failure to update his Schedules I or J when evaluating the *Zick* factors on remand. Accordingly,

IT IS ORDERED that the case is remanded to the bankruptcy court for a *de novo* evaluation of the *Zick* factors without consideration of (1) Franklin's post-bankruptcy fights, or (2) his failure to update Schedules I and J.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to close the case.

Dated: June 26, 2026        s/ Robert J. White       
Robert J. White
United States District Judge